Craig Wolfe
Benjamin D. Feder
Damon Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York  10178
Phone: (212) 808-7800
Fax:     (212) 808-7897
Email:  bfeder@kelleydrye.com
            dsuden@kelleydrye.com
Attorneys for defendant Our Lady of Mt. Carmel-St. Benedicta School

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> OLANIYI L. AKANMU & OMOLAYO T. SUARA, <br><br> Debtors. | Chapter 7 <br><br> Case No. 11-43773-CEC |
| ROBERT L. GELTZER, as Trustee of the Estate of OLANIYI L. AKANMU & OMOLAYO T. SUARA, <br><br> Plaintiff, <br><br> -v- <br><br> OUR LADY OF MT. CARMEL-ST. BENEDICTA SCHOOL, <br><br> Defendant. | Adv. Proc. No. 1-13-01107 <br><br> *Answering Papers Due by June 21, 2013* <br><br> *Reply Papers Du by: July 2, 2013* <br><br> *Hearing Date:  July 11, 2013* |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MT. CARMEL-ST. BENEDICTA SCHOOL'S MOTION TO DISMISS THE COMPLAINT**

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800

*Attorneys for Defendant Our Lady of Mt. Carmel-St. Benedicta School*

**TABLE OF CONTENTS**        **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.    THE TRUSTEE'S COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE AND MUST BE DISMISSED .................................. 4

    A.    The Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6) ................................. 4

    B.    The Trustee's Conclusory Allegation That the Debtor Did Not Receive Reasonably Equivalent Value or Fair Consideration For the Transfers is Belied By the Allegations in His Own Complaint .................................................. 5

        1.    Tuition Payments By Parents on Behalf of a Minor Child Conveys Direct Benefits to the Parents .................................................................. 6

        2.    The Debtors Received Indirect Benefits – Including Religious Faith Formation – in Exchange For Their Sons' Tuition Payments That Constitute Reasonably Equivalent Value and Fair Consideration .................................................................................................. 7

    C.    Even Assuming Trustee's Conclusory Allegations Were True The Transfers Would Fall Under the Charitable Contribution Safe Harbor ................. 8

    D.    The Trustee Has Failed to Properly Allege that the Debtors Were Insolvent at the Time the Transfers Were Made ....................................... 11

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................5, 11

*DeJong v. Commissioner of Internal Revenue*,
   309 F.2d 373 (9th Cir. 1962) ..................................................................................................6, 7

*In re Trinsum Group, Inc.*,
   460 B.R. 379 (Bankr. S.D.N.Y. 2011) ..........................................................................5, 11, 12

*In re Watson*,
   309 B.R. 652 (B.A.P. 1st Cir. 2004) ..................................................................................6, 7, 10

*In re Young*,
   82 F.3d 1407 (8th Cir. 1996) ................................................................................................7, 8

*Winters v. Commission of Internal Revenue*,
   468 F.2d 778 (2d Cir. 1972) ...................................................................................................6, 7

*Zlotnick v. Hubbard*,
   572 F. Supp. 2d 258 (S.D.N.Y. 2008) ........................................................................................3

**STATUTES**

11 U.S.C. 548(a)(1)(B) .................................................................................................................12

11 U.S.C. § 548(a) ..........................................................................................................................4

11 U.S.C. § 548 (a)(2)(A) ..............................................................................................................9

26 U.S.C. § 170 .............................................................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ................................................................................4, 12

§170(c) of the Internal Revenue Code ...........................................................................................9

Religious Liberty and Charitable Donation Protection Act of 1998 ("Charitable Donation
   Protection Act") .........................................................................................................................9

**OTHER AUTHORITIES**

105th Cong., 2d Sess. (1998) ............................................................................................................9

144 Cong. Rec. S4769-01 (1998) ......................................................................................................9

144 Cong. Rec. S4769-01 (1998) ..................................................................................................9, 11

Rule 7012 of the Federal Rules of Bankruptcy Procedure ...........................................................1, 4

H.R. REP. 105-556, 105th Cong., 2d Sess. (1998) ..........................................................................9

Theresa J. Pulley Radwan, *Sword or Shield: use of Tithing to Establish*
    *Nondishcargeability of debt Following enactment of the Religious Liberties* ..........................9

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure, Defendant Our Lady of Mt. Carmel-St. Benedicta School ("Mt. Carmel" or "Defendant") hereby submits this Motion to Dismiss the claims filed by Robert L. Geltzer (the "Trustee"), as Trustee of the Estate of Olaniyi L. Akanmu and Omolayo T. Suara (the "Debtors").

## PRELIMINARY STATEMENT

This action for fraudulent conveyance filed against Mt. Carmel should be dismissed because it is based on a novel and flawed legal theory which finds support neither in case law nor in common sense. The Trustee alleges that tuition payments made to Mt. Carmel, a Catholic elementary school operating under the auspices of the Archdiocese of New York, from approximately 2005 to 2011 (the "Transfers") on behalf of Isaac and Abraham Akanmu, who were the Debtors' minor sons when the Transfers were made (the "Minor Sons"), are avoidable as constructive – not actual – fraudulent conveyances under section 548 of the United States Bankruptcy Code (the "Bankruptcy Code") and sections 273, 274, and 275 of the New York Debtor and Creditor Law (the "D&CL"). The complaint is facially deficient and fails to state a claim upon which relief can be granted, and should accordingly be dismissed.[1]

---

[1] The Trustee has recently pursued this theory on behalf of another debtor's estate, against a different elementary school also operating under the auspices of the Archdiocese of New York. *Robert L Geltzer v. St. Frances De Chantal School,* Adv. Proc. No. 11-2918 (SHL). In that prior action, St. Frances wrote two letters requesting that the claims against it be dropped. First, it wrote to the Trustee on May 8, 2012, pointing out the claims' fatal flaws and respectfully requesting that the Trustee voluntarily withdraw his claims. The Trustee refused. Next, on September 12, 2012, St. Frances wrote a letter to Judge Lane respectfully requesting that the court dismiss the action. Judge Lane requested that the parties brief the issues so that he could make a decision on the merits. The parties then proceeded to file cross summary judgment motions, and after three rounds of briefing each (motion, opposition, and reply), the court held a hearing on December 20, 2012. At that hearing, Judge Lane expressed doubts about the Trustee's theory and even cautioned the Trustee that if his plan was to pursue the issue and obtain a ruling on the merits, "you've got to be careful what you wish for." (Declaration of Benjamin D. Feder in Support of Defendant's Motion to Dismiss, signed May 28, 2013, Ex. A at p. 20). Perhaps not surprisingly, shortly after oral argument and before a decision was rendered, the Trustee decided to voluntarily withdraw his claims. The claims were ultimately dismissed over St. Frances' objection at a hearing held on March 28, 2013.

The Trustee's case rests on a specious legal theory – that parents receive no value for educational services rendered to their minor children and that, therefore, elementary school tuition payments may be recovered by the Trustee as constructive fraudulent transfers.[2] This theory runs directly counter to the essential nature of the parent-child relationship and finds no precedent in case law. If it were accepted, it would have substantial implications for countless cases under the Bankruptcy Code, as the entire gamut of payments made by parents for the benefit of their children – including payments for food, clothing, housing, and even medical expenses – prior to bankruptcy could subsequently be called into question. The fact that there are no cases addressing this issue demonstrates that the Trustees' position is a breathtaking attempt to misuse the Bankruptcy Code to attack the most fundamental duties and obligations of parents to their minor children.

Moreover, relevant case law in related contexts makes it clear that parents do in fact receive significant value – both direct and indirect -- from educational services rendered to their minor children. The Debtors clearly obtained "reasonably equivalent value" under section 548 (and "fair consideration" under section 273 of the D&CL) in exchange for the Transfers, and the Trustee therefore cannot establish an essential element of his claims.

Alternatively, even if there were any merit to the Trustee's position that the Debtors did not realize any benefit from the Transfers – and there is not – the Trustee's claim would still fail. If there were no value received by the Debtor, then the Transfers to Mt. Carmel, a " qualified religious . . . organization", would fall squarely within the expansive safe harbor set forth in

---

[2] The Trustee does not allege that the Debtors had actual fraudulent intent. The entire legal theory rests solely on the Trustee's bizarre view that parents do not receive any value in return for providing basic necessities – such as education – to their minor children.

section 548(a)(2) of the Bankruptcy Code, as "charitable contributions." Hence, either way, the Trustee has failed to state a claim.

Furthermore, the Trustee has not adequately pled sufficient facts to establish that Debtors were insolvent at the time of the transfers. The Trustee's conclusory allegation is not enough to sustain its claim on this motion to dismiss.

## STATEMENT OF FACTS

Debtors filed a voluntary petition (the "Petition") under Chapter 7 of Title 11 of the United States Code on or about March 25, 2011 (the "Petition Date"). The Trustee was appointed by the Office of the United States Trustee on or about March 28, 2011. (Complaint, ¶ 5.) Mt. Carmel is a parochial elementary school operating under the auspices of the Archdiocese of New York, and the Court may take judicial notice that Mt. Carmel is a qualified religious or charitable entity pursuant to 11 U.S.C. § 548(a)(2). *See Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 262 n.5 (S.D.N.Y. 2008); *see also* Affidavit of James P. McCabe, signed May 23, 2013 ("McCabe Affidavit"), Exs. A and B.

The Debtors' Minor Sons, Isaac Akanmu and Abraham Akanmu, were students at Mt. Carmel – Isaac from at least the 2005-2006 school year through the 2010-2011 school year and Abraham during the 2005-2006 school year.[3] (Complaint, ¶ 11.)

From at least 2005 to the Petition Date, Debtors paid, and Defendant received, payments for their Minor Sons' tuition in the amount of approximately $24,745. (Complaint, ¶ 8.) The Debtors and their Minor Sons are residents of Staten Island, New York. (Complaint, ¶ 7.)

---

[3] The complaint incorrectly refers to Isaac Akanmu as the Debtors' "adult son." The Trustee cannot dispute that both children were minors during the entire duration of their attendance at Mt. Carmel – a primary school that does not offer instruction beyond the eighth grade. (McCabe Affidavit, ¶ 6.)

# **ARGUMENT**

## I. THE TRUSTEE'S COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT CONVEYANCE AND MUST BE DISMISSED

Even if the Court were to accept as true all of the facts stated in the Trustee's complaint, which Mt. Carmel does solely for the purposes of this motion, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure, because the Trustee has failed to state a claim upon which relief can be granted.

To sustain a prima facie claim that the Transfers at issue were constructively fraudulent under 11 U.S.C. § 548(a), and the analogous New York statute, the Trustee must establish that: (1) the Transfers were made for less than a reasonably equivalent value (or lack of fair consideration); and (2) the Debtors were insolvent when they made the Transfers or were rendered insolvent as a result of the Transfers. Here, the Trustee's causes of action must be dismissed, as a matter of law, because the Transfers at issue were made in exchange for reasonably equivalent value, as required by 11 U.S.C. § 548(a), and fair consideration, as required by D&CL § 273. Alternatively, even if the Trustee's conclusory allegation that the Debtors received no consideration in exchange for the Transfers is accepted as true, the Transfers fall squarely within the Bankruptcy Code's charitable contribution safe harbor and are therefore exempted from recovery. Moreover, the Trustee has not alleged sufficient facts to support its allegation that the Debtors were insolvent at the time of the Transfers.

### A.   The Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation and internal quotation marks omitted). A court, "is not bound to accept

as true any legal conclusions couched as factual allegation." *In re Trinsum Group, Inc.*, 460 B.R. 379, 387 (Bankr. S.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice" to state a proper cause of action. *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must make a "showing,' rather than a blanket assertion, of entitlement to relief" supported by sufficient "factual allegation[s]." *Twombly*, 550 U.S. at 556 n.3. (citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" nor will a complaint suffice if it tenders "naked assertions[s] devoid of further factual enhancement." *Id*. (citations and internal quotation marks omitted). Under the applicable legal standard, the Trustee's Complaint fails to state a cause of action against Mt. Carmel and must accordingly be dismissed.

  **B.**   **The Trustee's Conclusory Allegation That the Debtor Did Not Receive Reasonably Equivalent Value or Fair Consideration For the Transfers is Belied By the Allegations in His Own Complaint**

  The Trustee's conclusory assertion that the Debtors received no consideration in exchange for the Transfers is wrong as a matter of law, and therefore must be rejected. Here, it is undisputed that a benefit was conferred by Mt. Carmel in exchange for the tuition payments, and the Trustee does not allege – nor can he – that the tuition payment amounts were not proportionate to the benefit conferred by Mt. Carmel. The Complaint, however, implies that the educational benefits conferred by Mt. Carmel to Debtors' Minor Sons went solely to the children and that the Debtors themselves received nothing. The Trustee's theory finds no support in law or common sense. Accordingly, because the Trustee cannot establish this essential element of its causes of action, the Trustee's claims should be dismissed.

1.  **Tuition Payments By Parents on Behalf of a Minor Child Conveys Direct Benefits to the Parents**

Courts have uniformly held that parents receive a clear and direct benefit from the education provided to their minor children. The Second Circuit decision in *Winters v. Commission of Internal Revenue*, 468 F.2d 778 (2d Cir. 1972), is controlling and dispositive of the Trustee's claim. There, the parents of minor children attempted to classify payments to their children's private religious school as tax deductible charitable contributions on the basis of the precise argument that the Trustee has put forward here – that the taxpayers personally received nothing in return for the payments. *Winters*, 468 F.2d at 780. The Second Circuit Court of Appeals flatly rejected the parents' argument, finding instead that "tuition payments are not deductible because the donor expects, and in fact receives, a *definite economic benefit*" for the payments. *Id*. (emphasis added). Indeed, in *Winters* the Second Circuit held that parents both anticipate and receive substantial benefits from expenditures for their children's education. *Id*. at 781. The Trustee's claims here are foreclosed by the Second Circuit's recognition that not only do parents receive a benefit from these payments, but they receive a definite economic benefit.

The Second Circuit cited an earlier case in which the Ninth Circuit made a similar determination. In *DeJong v. Commissioner of Internal Revenue*, 309 F.2d 373 (9th Cir. 1962), the Ninth Circuit found that payments made by taxpayers to a non-profit corporation that owned and operated the grammar school attended by the taxpayers' children "were induced, at least in substantial part, *by the benefits which the parents sought and anticipated* from the enrollment of their children as students in the society's school." *Id.* at 376 (emphasis added).

A First Circuit Bankruptcy Appellate Panel has also adopted this common sense view, rejecting the argument that parents receive no value in exchange for tuition payments made on behalf of a minor child. *See In re Watson*, 309 B.R. 652, 662 (B.A.P. 1st Cir. 2004). In *Watson*,

a panel for the First Circuit, affirmed the bankruptcy court's denial of the debtors' Chapter 13 plan on the grounds that the debtors were not contributing all of their disposable income towards payment to their creditors. The Chapter 13 trustee had objected to the debtors' claimed expenses for parochial school tuition for their minor children. The debtors argued, among other things, that the tuition payments constituted "charitable contributions" and thus should be viewed as a "reasonably necessary" expense under section 1325(b)(2)(A) of the Bankruptcy Code. The First Circuit Bankruptcy Appellate Panel rejected the argument that the debtors received nothing in return for their child's private school tuition payments, saying, "to state the obvious, [the debtors] receive educational services in return for [such] tuition payments." *Id*. The court emphasized that the debtors "highly value the education received in return for their tuition payments." *Id*.

The Trustee's attempt to ignore the direct benefit the Debtors received from Mt. Carmel in exchange for the Transfers fails under the common sense reasoning of *Winters*, *DeJong* and *Watson*. As in those cases, here the Debtors directly benefited as a matter of law from the education Mt. Carmel provided to their Minor Sons.

### 2. The Debtors Received Indirect Benefits – Including Religious Faith Formation – in Exchange For Their Sons' Tuition Payments That Constitute Reasonably Equivalent Value and Fair Consideration

In addition to the direct benefits, the Debtors also received indirect benefits from the Transfers as a matter of law. For fraudulent transfer purposes, intangible and indirect benefits that parents receive sending their children to parochial school constitute reasonably equivalent value.

In *In re Young*, 82 F.3d 1407, 1415 (8th Cir. 1996), the Eight Circuit, in a case that predated the Charitable Donation Protection Act (as defined below), considered whether charitable contributions could be recovered as fraudulent transfers. The court, in discussing the

concept of "reasonably equivalent value", determined that "the Bankruptcy Court over-emphasized the financial or economic considerations in defining 'value' under § 548. '[T]he requirement of economic benefit to the debtor does not demand consideration that replaces the transferred property with something else tangible or leviable that can be sold to satisfy the debtor's creditors' claims.'" *Id*. (citations omitted).

In *In re Gonzalez*, a Southern District of New York bankruptcy judge expressly adopted the Eighth Circuit's view. *Gonzalez* involved an effort to avoid payments made by a debtor on the mortgage of the woman who was the mother of his acknowledged son. Judge Allan Gropper agreed with the Eighth Circuit's reasoning that an "indirect economic benefit" need only be "fairly concrete" and found that the debtor received reasonably equivalent value from the "psychic and other intangible benefits that he received from payments that he believed to be made for the benefit of [his] child." *Gonzalez*, 342 B.R. at 172; *see also id*. at 174.

Thus, even if the Debtors did not receive a direct economic benefit from the Transfers – which they did – the Debtors still received reasonably equivalent value and fair consideration from the intangible benefits gained from the Transfers. The provision of private religious education for their Minor Sons clearly constitutes precisely the type of "psychic and other intangible benefits" held to be reasonably equivalent value in *Gonzalez*.

### C. Even Assuming Trustee's Conclusory Allegations Were True The Transfers Would Fall Under the Charitable Contribution Safe Harbor

Even if, as the Trustee contends, the Debtors received "no monetary or other consideration" in exchange for the Transfers, the Trustee still cannot succeed here. (Complaint, ¶ 17.) In such event, the Transfers would be exempt from the Bankruptcy Code's constructive fraud provisions under section 548(a)(2)'s safe harbor for "charitable contribution[s] to a qualified religious or charitable entity or organization." 11 U.S.C. § 548(a)(2).

Section 548(a)(2) of the Bankruptcy Code exempts charitable contributions to qualified religious or charitable entities or organizations from the Bankruptcy Code's constructive fraud provisions. This section was enacted as a component of the Religious Liberty and Charitable Donation Protection Act of 1998 ("Charitable Donation Protection Act") to protect churches and other charitable organizations from "vigilant, and some might say over-zealous, bankruptcy trustees." 144 Cong. Rec. S4769-01, at 5 (1998).

The Charitable Donation Protection Act singled out these organizations for protection because they "often operate on shoe-string budgets,"[4] and too frequently, before the adversary proceeding is even initiated, they will have already spent the contributions in furtherance of their charitable purposes. *See, e.g.*, H.R. REP. 105-556, 105th Cong., 2d Sess. at 2 (1998) (explaining that it is nearly impossible for churches to budget for the return of contributions and that fraudulent transfer actions against churches present "terrible hardships" that Congress intended to eliminate by the Charitable Donation Protection Act). The protections afforded to these organizations from the Bankruptcy Code's constructive fraud provisions were therefore intended to be very broad, subject only to the limitation that the contributions may not exceed 15% of the debtor's income. 11 U.S.C. § 548 (a)(2)(A).

The only two elements that must be established under Section 548(a)(2)'s safe harbor is that the contested payments must have been (1) "charitable contributions", and (2) "made to a qualified religious or charitable entity or organization." 11 U.S.C. § 548(a)(2). Section 548(a)(2) incorporates §170(c) of the Internal Revenue Code of 1986 for the definition of

---

[4]    144 Cong. Rec. S4769-01, at 3 (1998) ("Having to pay back money that has been received and already spent is a real hardship for churches which often live on a shoe-string budget."); *see also* H.R. REP. 105-556, H.R. Rep. 105th Cong., 2d Sess. at 2 (1998); *See also* Theresa J. Pulley Radwan, *Sword or Shield: use of Tithing to Establish Nondishcargeability of debt Following enactment of the Religious Liberties*, 19 AM BANKR. INST. L. REV. 471, 491 (2011) ("Clearly, the [Charitable Donation Protection] Act sought to, at a minimum, protect churches and charities from being required to return funds already received from donors.").

"charitable contribution." The Internal Revenue Code, in turn, defines the term as a "contribution or gift to or for the use of" a qualified entity. 26 U.S.C. § 170. The I.R.S. has clarified further that a "charitable contribution" is a payment that is voluntarily made "without getting or expecting to get, anything of equal value." *See* the I.R.S.'s website, http://www.irs.gov/publications/p526/ar01.html; *See also Watson*, 309 B.R. 652, 662 (2004) ("a 'charitable contribution' means a . . . gift . . . [and] a 'gift' is something for which the *giver* receives nothing in return") (emphasis added).

According to the Complaint, the Transfers here fall squarely into the definition of "charitable contributions." In the Complaint, the Trustee asserts that "no monetary or other consideration was received by the Debtor" from Mt. Carmel for the Transfers. (Complaint, ¶ 14.) If the Court were to agree with the Trustee's assertions, then the Transfers would invariably fit under the definition of "charitable contributions" articulated by both the I.R.S and the First Circuit BAP.

Although the Transfers to Mt. Carmel clearly satisfy the legal definition of "charitable contributions" under the Trustee's theory, any ambiguity that may exist under Section 548(a)(2) should be decided in favor of Mt. Carmel. The Charitable Donation Protection Act's legislative history makes clear that Mt. Carmel is precisely the type of charitable organization that that legislation was intended to protect. Congress unmistakably intended to protect charitable organizations broadly from liability for contributions that likely would be used almost immediately. During the Senate floor debates on the Charitable Donation Protection Act, Senator Hatch, in support of the bill, stated as follows:

> By the time the bankruptcy claim is filed, the money has been spent feeding the poor or otherwise serving the needs of the congregation. Many churches find it very difficult to make up money that has already been spent, and when they can, it weakens

>   their ability to do the charitable and spiritual work that is part of
>   the grand tradition of religious charity in America.[5]

In the present case, the Trustee seeks to unwind payments that Mt. Carmel received as far back as 2005, eight years before the Complaint was filed. (Complaint, ¶¶ 10, 11.) This is a quintessential example of the type of overreaching by an "overzealous trustee" that prompted Congress to enact the Charitable Donation Protection Act.

Accordingly, the Trustee has not stated a legally cognizable theory for recovery in this case. Even if the Court were to agree with the Trustee's argument that the Debtors received no value from Mt. Carmel in exchange for their Minor Son's private school tuition payments, the payments would constitute "charitable contributions" under 548(a)(2) and would therefore be exempt from the Trustee's action for constructive fraud.

### D. The Trustee Has Failed to Properly Allege that the Debtors Were Insolvent at the Time the Transfers Were Made

In addition, the Trustee has not properly alleged the second element of a constructively fraudulent transfer, that the Debtors were insolvent at the time the Transfers were made. Indeed, the Trustee's best attempt to show the presence of this element consists of the assertion that it "has reviewed the books and records that the Debtors supplied to the Trustee and has determined, upon information and belief, the Debtors were insolvent or were rendered insolvent as a result of such Transfers." (Complaint, ¶¶ 20, 25.) This conclusory statement, without the support of any facts whatsoever, falls well short of the "showing" necessary to sustain a motion to dismiss under 12(b)(6). See, *Twombly*, 550 U.S. at 556 n.3. ("Rule 8(a)(2) still requires a 'showing' rather than a blanket assertion); see also, *In re Trinsum Group, Inc.*, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011). Because the Trustee has not alleged sufficient facts to show that Debtors were

---

[5]   144 Cong. Rec. S4769-01, at 5 (1998).

insolvent at the time of the Transfers, or were rendered insolvent as a result of the Transfers, the Trustee has failed to state a claim upon which relief can be granted and the claims must be dismissed.

In *In re Trinsum Group, Inc.*, the court found that the complaint there failed to plead insolvency despite the debtor's inclusion of much greater information than the Trustee provided here. There, the complaint listed the debtor's net cash flow figures for each of the five years leading up to the petition date. 460 B.R. at 392. The complaint also alleged that the debtor's revenues declined and debt grew for several years during that period. The court, however, found that "without more detailed information the Amended Complaints fail to sufficiently plead the insolvency element required under New York Law to bring a constructive fraudulent conveyance action under section 544(b)."[6] *Id.* at 393. The court therefore dismissed the claims under F.R.C.P. 12(b)(6). *Id.* Here, the Trustee has not pled enough facts from which it can be determined whether the Debtors were insolvent at the date of the transfers, which were made as far back as 2005. The Trustee's claims must therefore be dismissed.

---

[6] The court did not reach the insolvency issue with respect to the debtor's claim under 11 U.S.C. 548(a)(1)(B) because it found that the transfers were made for value, but the court nonetheless stated that this element would not have been met had it been necessary for the court to consider it. *In re Trinsum Group, Inc.*, 460 B.R. 379, 389 n. 6. (Bankr. S.D.N.Y 2011).

## CONCLUSION

For all of the foregoing reasons asserted herein, Defendant Mt. Carmel respectfully requests that this Court enter an order dismissing the Trustee's claims and ordering such other relief as the Court deems just and proper.

Dated:   New York, New York
         May 28, 2013

                                            KELLEY DRYE & WARREN LLP


                                            By:  _____/s/ Craig Wolfe_____
                                                Craig Wolfe
                                                Benjamin D. Feder
                                                Damon Suden
                                            101 Park Avenue
                                            New York, New York 10178
                                            (212) 808-7800

                                            *Attorneys for Defendant Our Lady of Mt. Carmel-St. Benedicta School*