UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:                                          Chapter 7

OLANIYI L. AKANMU & OMOLAYO T. SUARA            Case No. 11-43773-CEC
                         Debtors.
----------------------------------------------------------------X
ROBERT L. GELTZER, as Trustee of the Estate of
OLANIYI L. AKANMU & OMOLAYO T. SUARA
                         Plaintiff,

            -against-                           Adv. Proc. No. 13-01105-CEC


XAVERIAN HIGH SCHOOL
                         Defendant.
----------------------------------------------------------------X


ROBERT L. GELTZER, as Trustee of the Estate of
OLANIYI L. AKANMU & OMOLAYO T. SUARA
                         Plaintiff,

            -against-                           Adv. Proc. No. 13-01107-CEC


OUR LADY OF MT. CARMEL- ST.BENEDICTA
SCHOOL
                         Defendant.
----------------------------------------------------------------X


<u>DECISION</u>


APPEARANCES:

Daniel Gershburg, Esq.                  Fred Stevens, Esq.
Joyce Campbell Priveterre, Esq.         Sean C. Southard, Esq.
Daniel Gershburg, Esq. P.C.             Thomas Szaniawski, Esq.
55 Broad Street, Suite 18B              Maeghan J. McLoughlin, Esq.
New York, NY 10004                      Klestadt & Winters, LLP
Attorneys for Plaintiff                 570 Seventh Avenue, 17th Floor
                                        New York, NY 10018
Benjamin D. Feder, Esq.                 New York, NY 10018
Damon Suden, Esq.                       Attorneys for Defendant
Kelley Drye & Warren LLP                Xaverian High School
101 Park Avenue
New York, NY 10178
Attorneys for Defendant
Our Lady of Mt. Carmel-
St. Benedicta School


CARLA E. CRAIG
Chief United States Bankruptcy Judge

In these adversary proceedings, the trustee in a chapter 7 case of a married couple, who filed as joint debtors, seeks to recover from two parochial schools tuition payments made by the debtors prior to the commencement of the case for the education of their two minor children, as fraudulent conveyances.  The trustee's claims are based upon the theory that because the parents were not "direct beneficiaries" of the tuition payments, and because private schooling of their children was, in the trustee's judgment, "not reasonably necessary," the debtors did not receive reasonably equivalent value or fair consideration for the tuition payments under § 548(a)(1)(B) of the Bankruptcy Code or § 273 of the New York Debtor & Creditor Law.  (Pl.'s Opp'n ¶ 3, Adv. Pro. No. 13-1105-CEC, ECF No. 19; Pl.'s Opp'n ¶ 3, Adv. Pro. No. 13-1107-CEC, ECF No. 16.)

The trustee's claims are based on a fundamentally flawed legal theory that is, moreover, at odds with common sense.  The education provided by the defendants to these minor children constitutes both a direct and indirect benefit to their parents, who, with their children, must be considered a single economic unit for purposes of this analysis.  Accordingly, the defendants' motions to dismiss these adversary proceedings are granted.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (H),  28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Background</u>

The following facts are undisputed or are alleged by the plaintiff.

On March 25, 2011, Olaniyi L. Akanmu and Omolayo T. Suara (together, the "Debtors")

filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy

Code").  Following the commencement of the bankruptcy case, pursuant to §§ 701 and 702,[1]

Robert L. Geltzer (the "Trustee") was appointed as trustee of the Debtors' bankruptcy estate.

From 2005 through 2011, the Debtors' two minor children were students at Our Lady of

Mt. Carmel-St. Benedicta School ("Mt. Carmel") and Xaverian High School ("Xaverian," and

with Mt. Carmel, the "Defendants") at various times.  The older child was a student at Mt.

Carmel during the 2005-2006 school year, and was a student at Xaverian from 2006 through

2010.  (Mt. Carmel's Mem. of Law in Supp. of Mot. to Dismiss at 3, Adv. Pro. No. 13-1107-

CEC, ECF No. 9-1; Xaverian's Mot. to Dismiss ¶ 1, Adv. Pro. No. 13-1105-CEC, ECF No. 10.)

The Debtors' younger child attended Mt. Carmel from 2005 through 2011.  (Mt. Carmel's Mem.

of Law in Supp. of Mot. to Dismiss at 3, Adv. Pro. No. 13-1107-CEC, ECF No. 9-1.)

From 2005 to 2011, Mt. Carmel received approximately $21,540 (the "Mt. Carmel

Tuition Payments") for tuition paid on behalf of the younger child and approximately $3,206 for

tuition paid on behalf of the older child.  (Compl. ¶¶ 10-11, Adv. Pro. No 13-1107-CEC, ECF

No. 1).  From 2006 through 2010, Xaverian received approximately $21,816 (the "Xaverian

Tuition Payments," and together with the Mt. Carmel Tuition Payments, the "Tuition Payments")

for tuition paid on behalf of the older child.  (Compl. ¶¶ 8-9, Adv. Pro. No. 13-1105, ECF No. 1.)

On March 22, 2013, the Trustee commenced these adversary proceedings against

Xaverian and Mt. Carmel seeking to recover the Tuition Payments, totaling $46,562, as

constructively fraudulent transfers under §§ 544 and 548(a)(1)(B) and New York Debtor &

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, Title 11, U.S.C.

Creditor Law ("DCL") § 273.  The Trustee alleges that because the Debtors' children, not the Debtors, received the education provided by the Defendants, the Debtors did not receive reasonably equivalent value or fair consideration in exchange for the Tuition Payments.  The Trustee also contends that, at the time each tuition payment was made, the Debtors (i) were insolvent or were rendered insolvent as a result of such transfers, (ii) had unreasonably small capital for the business in which they were engaged or were about to engage, and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.  (Compl. ¶ 24, Adv. Pro. No. 13-1105-CEC, ECF No. 1; Compl. ¶ 26, Adv. Pro. No. 13-1107-CEC, ECF No. 1.)

The Defendants' motions to dismiss focuses on the element of reasonably equivalent value and fair consideration, contending that, as a matter of law, the value provided in the form of an education for the Debtors' children constitutes reasonably equivalent value and fair consideration to the Debtors.[2]

### Legal Standard for Dismissal of Complaints

Federal Rule of Civil Procedure 12(b)(6), made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

---

[2] Mt. Carmel alternatively argues that, if it is determined that the Debtors did not receive value in exchange for the tuition payments, the Mt. Carmel Tuition Payments should be considered charitable contributions and therefore exempt from avoidance pursuant to § 548(a)(2).  Given the conclusion that the Defendants gave reasonably equivalent value and fair consideration to the Debtors by providing education for their children, it is unnecessary to address this defense.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 55 U.S. 544, 570 (2007)).  In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  A complaint must make a "'showing,' rather than a blanket assertion, of entitlement to relief" supported by sufficient "factual allegation[s]." Twombly, 550 U.S. at 556 n.3.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (alteration in original) (citations and internal quotation marked omitted).

## Discussion

A.    Constructively Fraudulent Conveyance

1. Legal Standard for Avoidance Based on Constructive Fraud

Section 548(a)(1)(B) authorizes a trustee to avoid a transfer of an interest in property of the debtor under a theory of constructive fraud.  That section provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C § 548(a)(1)(B).  The purpose of this provision is to set aside transactions that "unfairly or improperly deplete a debtor's assets" so that the assets may be made available to creditors. Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010) (citing 5 Collier on Bankruptcy ¶ 548.01 and In re PWS Holding Corp., 303 F.3d 308, 313 (3d Cir. 2002)).  See also Walker v. Treadwell (In re Treadwell), 699 F.2d 1050, 1051 (11th Cir. 1983) ("The object of section 548 is to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property.").

Section 544(b) authorizes a trustee to avoid a transfer of an interest in property of the debtor by utilizing applicable state law that permits such avoidance.  11 U.S.C. § 544(b).  Here, the "applicable law" is DCL § 273, which provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. Debt. & Cred. Law § 273.

The Bankruptcy Code does not define "reasonably equivalent value."  "[T]he question of reasonably equivalent value is determined by the value of the consideration exchanged between the parties at the time of the conveyance or incurrence of debt which is challenged."  FCC v.

NextWave Personal Commc'ns, Inc. (In re NextWave Personal Commc'ns, Inc., 200 F.3d 43, 56 (2d Cir. 1999) (emphasis, internal quotations, and citation omitted). The consideration given in exchange for the transfer need not be mathematically equal, or a penny for penny. Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez), 342 B.R. 165, 174 (Bankr. S.D.N.Y. 2006); MFS/Sun Life Trust–High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 937 (S.D.N.Y. 1995). See also U.S. v. McCombs, 30 F.3d. 310, 326 (2d Cir. 1994) ("[T]he concept [of fair consideration] can be an elusive one that defies any one precise formula." (discussing DCL § 272)). In reaching its determination, a "court should consider both direct and indirect benefits flowing to the debtor as a result of the exchange." The Liquidation Trust v. Daimler AG (In re Old CarCo LLC), No. 11 Civ. 5039 (DLC), 2011 WL 5865193, at *7 (S.D.N.Y. Nov. 22, 2011) (citing Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 646-47 (3d Cir.1991) and Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 991-92 (2d Cir.1981)).

"Fair consideration" for purposes of DCL § 273 can be established by showing that the transfer was in exchange for "fair equivalent" value and that the transferee acted in good faith. DCL § 272(a). "Fair consideration" under the DCL and "reasonably equivalent value" under § 548(a)(1)(B)(i) have substantially the same meaning. Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC), 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011).

Section 548(d) defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). In other words, transfers that satisfy, discharge, or secure all or part of an obligation of the transferor are for "value."

Generally, a debtor's payment of another's debt may be avoided as a constructively fraudulent transfer under § 548(a) if the debtor was insolvent or was rendered insolvent thereby.

See, e.g., H.B.E. Leasing Corp. v. Frank, 48 F.3d 623, 638 (2d Cir. 1995); Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 991-992 (2d Cir. 1981); In re Richards & Conover Steel, Co., 267 B.R. 602, 613 (B.A.P. 8th Cir. 2001); Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest. Inc.), 337 B.R. 495, 502 (Bankr. S.D.N.Y. 2006).  However, it is well-established that a debtor may receive indirect value by paying a debt for which is he is not liable.  See Rubin, 661 F.2d at 991-992.

While the defense of indirect benefit is most often asserted in the corporate context, for example, cases involving a parent company and a subsidiary, indirect benefits have also been found in cases where the transferor is an individual debtor.  See, e.g., Montoya v. Campos (In re Tarin), 454 B.R. 179 (Bankr. D.N.M. 2011) (Debtors received reasonably equivalent value for amount paid to their daughter's wedding planner because the debtors, their guests, and the daughter, "got to smell the flowers, listen and dance to the music, eat the food, etc."); Barber v. Iverson (In re Iverson), Case No. 05-80982, Adv. No. 06-8169, 2008 WL 2796998 (Bankr. C.D. Ill. Jul. 21, 2008) (Debtors received indirect benefit for payments made on third party's debt by reducing the debtors' debt to the third party.); Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez), 342 B.R. 165 (Bankr. S.D.N.Y. 2006) (Debtor received reasonably equivalent value when he made mortgage payments for a home in which a child for which he acknowledged paternity and the child's mother lived.); Satriale v. Key Bank USA, N.A. (In re Burry), 309 B.R. 130 (Bankr. E.D. Pa. 2004) (Debtor received reasonably equivalent value when he made payments for a friend's boat, where the debtor also used the boat.); Jones v. Williams (In re McDonald), 265 B.R. 632 (Bankr. M.D. Fla. 2001) (Debtor received reasonably equivalent value for payments made for neighbor's delinquent lot rental in mobile home park because the debtor's opportunity to purchase the neighbor's mobile homes was preserved.); Harker v. Ctr. Motors,

Inc. (In re Gerdes), 246 B.R. 311 (Bankr. S.D. Ohio 2000) (Debtor received "significant indirect benefit" by avoiding personal liability when she paid a debt of her wholly-owned corporation.).

      2. <u>Application of the Legal Standard to these Adversary Proceedings</u>

      The Trustee argues that the Debtors did not receive reasonably equivalent value in exchange for the Tuition Payments, because the Debtors' children, not the Debtors, attended the schools and received the education provided by the Defendants. Contrary to the Trustee's contention, the Debtors received reasonably equivalent value and fair consideration, directly and indirectly, in exchange for the Tuition Payments, in the form of the education provided to their children.

      It is axiomatic that parents are obligated to provide for their children's necessities, such as food, clothing, shelter, medical care, and education. <u>See</u> <u>Holodook v. Spencer</u>, 36 N.Y.2d 35, 44 (N.Y. 1974). Under New York law, parents are legally obligated to supply their children with "adequate food, clothing, shelter [and] education . . . medical, dental, optometrical [and] surgical care." Fam. Ct. Act § 1012(f)(i)(A) (defining "neglected child"). <u>See also</u> N.Y. Comp. Codes R. & Regs. tit. 22 § 202.67(g) (A court may not permit a parent to use a child's personal injury settlement funds "where the parents are financially able to support the [minor] and to provide for the [minor]'s necessaries, treatment and education."). Additionally, New York state law requires parents to ensure school attendance by their child. N.Y. Educ. Law § 3212; <u>In re Gabriella G.</u>, 962 N.Y.S.2d 537, 539 (N.Y. App. Div. 2013) ("'Proof that a minor child is not attending a public or parochial school in the district where the parent[ ] reside[s] makes out a prima facie case of educational neglect pursuant to section 3212(2)(d) of the Education Law.'" (alteration in original) (quoting <u>In re Matthew B.</u>, 24 A.D.3d 1183, 1184 (N.Y. App. Div. 2005))). "A parent's failure to observe minimum standards of care in performing these duties entails both remedial

sanctions, such as the forfeiture of custody, and criminal sanctions." <u>Holodook</u>, 36 N.Y.2d at 44. The Debtors, by paying tuition to the Defendants and enrolling their children as students, satisfied their legal obligation to provide for their education.

The Trustee argues that New York law does not require the Debtors to provide parochial or private school education, and that the Debtors could have satisfied their obligation at no cost by sending the children to public school. This argument misses the point. The fact that the Debtors chose to educate their children in parochial school rather than public school, arguably exceeding the "minimum standard of care," does not change the fact that, by doing so, they satisfied their legal obligation to educate their children, thereby receiving reasonably equivalent value and fair consideration. It is irrelevant to this determination whether the Debtors could have spent less on the children's education, or, for that matter, on their clothing, food, or shelter. To hold otherwise would permit a trustee to scrutinize debtors' expenditures for their children's benefit, and seek to recover from the vendor if, in the trustee's judgment, the expenditure was not reasonably necessary, or if the good or service could have been obtained at a lower price, or at no cost, elsewhere. For example, a trustee could seek to avoid a debtor's payments to a restaurant for a meal purchased for the debtor's child, or payments to a department store for clothing purchased for the child, on a theory that adequate food or clothing could have been obtained at lower cost. A trustee could sue the vendor to recover the cost of a computer or other electronic device purchased pre-petition by a debtor for his child, on the theory that the item was not reasonably necessary. (<u>See</u> Pl.'s Opp'n ¶ 3, Adv. Pro. No. 13-1105-CEC, ECF No. 19; Pl.'s Opp'n ¶ 3, Adv. Pro. No. 13-1107-CEC, ECF No. 16; Tr.[3] at 36, 58.) The absurdity of this scenario is obvious.

---

[3] "Tr." refers to the transcript of the hearing held on July 11, 2013.

A trustee is not granted veto power over a debtor's personal decisions, at least with respect to pre-petition expenditures.  "[A] trustee's powers are not limitless." In re Thompson, 253 B.R. 823, 825 (Bankr. N.D. Ohio 2000).  "[T]he 'Bankruptcy Code confers absolutely no power upon the trustee to make decisions concerning how a debtor manages his everyday affairs such as where the debtor will live or work.'" French v. Miller (In re Miller), 247 B.R. 704, 709 (Bankr. N.D. Ohio 2000) (determining whether a chapter 7 trustee may waive the attorney-client privilege of a debtor).  This is equally applicable to a debtor's decisions concerning where and how to educate his children.

Nor does the fact that a debtor's pre-petition expenditures may have been unwise or ill-advised, without more, constitute grounds for avoidance of the transaction as a constructive fraudulent conveyance.  As one court has noted:

> Often, a debtor prior to bankruptcy will make improvident purchases or expenditures which have a detrimental effect on creditors and may even be the precipitating cause of bankruptcy. A spendthrift debtor may purchase clothes or a new car, take costly vacations on credit, or otherwise incur unpayable debts for goods or services.  The fact that all these transactions may be said to "exacerbate the harm to creditors and diminish the debtor's estate" from an overall perspective does not mean that the debtor received less than reasonably equivalent value in respect of each particular transaction.

Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.), 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000), aff'd sub nom. Balaber-Strauss v. Lawrence, 264 B.R. 303 (S.D.N.Y. 2001).

Another court, in rejecting a chapter 7 trustee's fraudulent conveyance claim for pre-petition payments made by a debtor for costs related to a horse owned by the debtor's spouse, made a similar point concerning a debtor's pre-petition expenditures on behalf of his family:

> [T]he Court views these horse related costs as an expense of the
> family, albeit a high expense given that owning a horse is
> obviously not a family necessity, no different than had Debtor paid
> $5,000 in elective surgery for his wife during the year prior to
> bankruptcy, paid $5,000 to take her on a vacation, paid for gasoline
> or repairs to a car she owned, or paid her share of the family's
> restaurant bills, grocery bills, utility bills, etc.  Similarly, Debtor's
> schedules reflected a monthly clothing bill of $520, of which
> undoubtedly some significant portion belonged to [the spouse] and
> Debtor's children, but the Trustee is not trying to recover those
> clothes or the amount Debtor spent for those clothes, from [the
> spouse] or his children.
>
> Although in retrospect, Debtor's decision to pay these large
> expenses for riding lessons, boarding costs, horse shows, and
> veterinarian bills, as well as his decision to pay, each month, $975
> for food for a family of four, $229 for recreation, $880 for two car
> payments, $142 for cell phones, $129 for health club dues, $229
> for personal care, or $520 for clothing, may not have been
> financially sound ones, in light of his mounting debt, the Court will
> not under the unique facts of this case tell this Debtor, after the
> fact, that similar amounts spent herein for what the family treated
> as a routine monthly expense, are subject to recovery by a trustee
> under § 548.

Morris v. Vansteinberg (In re Vansteinberg), Case No. 01-15474, Adv. No. 02-5151, 2003 WL
23838125, at *6 (Bankr. D. Kan. Nov. 26, 2003).

More recently, a court rebuffed a trustee's attempt to recover from the debtors' daughter the funds paid by the debtors to a wedding planner for her wedding.  In dismissing the action with prejudice, the court questioned: "If [the trustee] were entitled to recover from the daughter, would he also be entitled to recover from the guests?  And what would be the difference between this set of facts and a situation in which [d]ebtors hosted Thanksgiving dinner for all the extended family?"  Montoya v. Campos (In re Tarin), 454 B.R. 179, 183 (Bankr. D.N.M. 2011).

The Trustee, citing Watson v. Boyajian (In re Watson), 309 B.R. 652 (B.A.P. 1st Cir. 2004), argues that the Tuition Payments are "not beyond the pale of examination."  (Pl.'s Opp'n ¶ 9, Adv. Pro. No. 13-1105-CEC, ECF No. 19; Pl.'s Opp'n ¶ 9, Adv. Pro. No. 13-1107-CEC,

ECF No. 16.)  The Trustee's reliance on Watson, a chapter 13 case, is misplaced.  In that case, the question before the court was whether the debtors' post-petition expenses for their children's private school education were "reasonably necessary" for purposes of calculating the debtors' projected disposable monthly income under § 1325.  Watson, 309 B.R. at 660-662.

In a chapter 13 case, a debtor is required to formulate a plan to repay creditors.  11 U.S.C. §§ 1321, 1322.  If the chapter 13 trustee or an unsecured creditor objects to the confirmation of the plan, a court may not confirm the plan unless all claims are being paid in full under the plan, or the debtor is committing all of his "projected disposable income" to fund the plan.  11 U.S.C. § 1325(b)(1).  A chapter 13 debtor's disposable income is calculated by subtracting amounts that are "reasonably necessary . . . for the maintenance or support of the debtor or a dependent of the debtor" from the debtor's current monthly income.  11 U.S.C. § 1325(b)(2).  The court therefore must review the chapter 13 debtor's expenses on a going-forward basis and evaluate whether those projected expenses are reasonably necessary for the maintenance or support of the debtor or the debtor's family, in order to determine whether the debtor's plan properly allocates all of the debtor's disposable income to the repayment of creditors.

The "reasonably necessary" analysis is entirely inapplicable in a chapter 7 case.  A chapter 7 debtor does not propose a plan to repay creditors, and his post-petition income is not included in the chapter 7 estate or in the distributions received by creditors.[4]  In a chapter 7 case, the trustee collects and liquidates the debtor's pre-petition, non-exempt assets.  11 U.S.C. § 704. The proceeds are then divided amongst creditors in order of priority.  11 U.S.C. § 726.  Unless the chapter 7 case would be an abuse of the Bankruptcy Code, i.e., if the debtor has the financial

---

[4] One exception to this rule, not relevant here, is that a debtor's post-petition property interest in an inheritance, property settlement with a spouse, or life insurance proceeds becomes property of the estate if received within 180 days of the bankruptcy filing.  11 U.S.C. § 541(a)(5).

ability to repay creditors under a chapter 11 or chapter 13 plan, there is no review of a chapter 7

debtor's post-petition income and expenses.  See 11 U.S.C. § 707(b).

However, none of the chapters of the Bankruptcy Code authorize the trustee to review the

reasonableness of a debtor's pre-petition expenditures or to seek recovery of expenditures

deemed not "reasonably necessary."  While a debtor's pre-petition spending may be relevant in

an action to deny a chapter 7 debtor's discharge for the failure "to explain satisfactorily . . . any

loss of assets or deficiency of assets to meet the debtor's liabilities" under § 727(a)(5), even then,

a debtor is not required to justify the reasonableness of his expenditures.  "[T]he focus of

§ 727(a)(5) is not on whether such spending is on illegal, immoral, or otherwise imprudent

activities, but rather on the sufficiency of the explanation for the loss."  Richardson v. Von

Behren (In re Von Behren), 314 B.R. 169, 181 (Bankr. C.D. Ill. 2004) (Trustee's criticism of the

debtors' "'lavish spending' on vacations and nice vehicles," was irrelevant to whether the

debtors' discharge would be denied under § 727(a)(5).).

The Trustee's argument that parents do not receive reasonably equivalent value when

they make tuition payments for their children's education was recently rejected in McClarty v.

University Liggett School (In re Karolak), Case No. 12-61378, Adv. No. 13-04394-PJS, 2013

WL 4786861 (Bankr. E.D. Mich. Sept. 6, 2013).  In that case, a chapter 7 trustee sought to

recover $16,690 in tuition payments made by a chapter 7 debtor to a private school for her three

minor children, pursuant to §§ 548(a)(1)(B) and 544.  Karolak, 2013 WL 4786861, at *1.  On

cross-motions for summary judgment, the court ruled against the trustee, reasoning:

> The reasonably equivalent value consisted of the grammar school
> education that [the debtor]'s children received at [the defendant].
> This is not a case where the value comes from someone other than
> the recipient of the transfer.  In exchange for the tuition payments,
> [the defendant] provided reasonably equivalent value to [the
> debtor] in the form of educating her three minor children.  [The

> debtor] purchased the education for her children and she directly
> received the benefit of that purchase.  In the state of Michigan, a
> parent has a legal obligation under Mich. Comp. Laws Ann.
> § 380.1561(1) to provide schooling for their children.  [The
> debtor]'s tuition payments to [the defendant] provided schooling
> for her minor children and enabled her to fulfill her statutory duty.
> . . .  The fact that [the debtor] could arguably have provided a
> cheaper form of education to her children than sending them to
> [the defendant] does not mean that she did not receive a reasonably
> equivalent value in exchange for the tuition payments.

Id. at *3.

Similarly, in Watson, the court noted the value given to the debtors in exchange for

tuition payments for their children.  In concluding that private school tuition expenses did not

constitute permissible charitable contributions for purposes of § 1325, the Watson court pointed

out: "[The debtors] receive educational services in return for their tuition payments.  Indeed, as

[one of the debtors] testified, the [debtors] and their children highly value the education received

in return for their tuition payments."  Watson, 309 B.R. at 662.

The two cases cited by the Trustee in which pre-petition tuition payments were avoided

as fraudulent conveyances concerned tuition payments for students over the age of 18, and are

therefore distinguishable from the instant case.  In Gold v. Marquette University (In re Leonard),

the trustee sought to avoid college tuition payments made by the debtors on behalf of their adult

child.  Gold v. Marquette Univ. (In re Leonard), 454 B.R. 444 (Bankr. E.D. Mich. 2011).  The

college sought summary judgment, arguing that the debtors received reasonably equivalent value

for the tuition payments by receiving peace of mind in knowing that their son was receiving a

quality education, and by receiving the expectation that their son would become financially

independent because of such education.  Id. at 454-455.  The court, noting that the debtors were

not legally obligated to provide their adult child with a college education, determined that the

debtors did not receive any value in exchange for the tuition payments because the debtors'
benefit was not concrete and quantifiable.  Id. at 457-458.

In Banner v. Linsday (In re Lindsay), a debtor made various pre-petition transfers,
including the pre-payment of his son's college tuition, after the debtor's business partner had
commenced an action against him.  Banner v. Linsday (In re Lindsay), Case No. 06-36352
(CGM), Adv. No. 08-9091 (CGM), 2010 WL 1780065 (Bankr. S.D.N.Y. May 4, 2010).  The
chapter 7 trustee filed an adversary proceeding against the debtor and his wife, seeking, among
other things, recovery of the monies paid to the college.  Noting that the debtor presented no
evidence of a legal obligation to pay his son's college tuition, the court held that the tuition
transfers were avoidable under DCL § 273-a because the debtor did not receive fair
consideration. [5]  Id. at *9-10.

It is by no means clear that the pre-petition tuition payments on behalf of a college-age
child would be recoverable as a constructively fraudulent conveyance.  Indeed, two recent cases
have held to the contrary.  In Sikirica v. Cohen (In re Cohen), Case No. 05-38135-JAD, Adv. No.
07-02517-JAD, 2012 WL 5360956 (Bankr. W.D. Pa. Oct. 31, 2012), rev'd on other grounds, 487
B.R. 615 (W.D. Pa. 2013), the court rebuffed a chapter 7 trustee's effort to recover payments
made by the debtors for tuition for their children's undergraduate educations, holding that
"[w]hile the Pennsylvania legislature has not yet enacted a statute that requires parents to pay for
their children's post-secondary education, this Court holds that such expenses are reasonable and
necessary for the maintenance of the Debtor's family for purposes of the fraudulent transfer
statute only." Cohen, 2012 WL 5360956, at *10.  Accord, Shearer v. Oberdick (In re Oberdick),

---

[5] DCL § 273-a provides: "Every conveyance made without fair consideration when the person making it is a
defendant in an action for money damages or a judgment in such an action has been docketed against him, is
fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment
for the plaintiff, the defendant fails to satisfy the judgment."  N.Y. Debt. & Cred. Law § 273-a.

490 B.R. 687, 712 (Bankr. W.D. Pa. 2013) (holding that funds paid for undergraduate college

tuition for debtor's children constituted expenditures for necessities that were therefore not

avoidable under the Pennsylvania Uniform Fraudulent Transfer Act). See N.Y. Fam. Ct. Act

§ 413 (in child support actions, imposing an obligation on parents to support their children,

including by providing education, through the age of twenty-one if the parent is financially able);

N.Y. Dom. Rel. Law § 240 1-b (same).

Here, however, the result is crystal clear.  The Debtors are legally obligated under New

York Law to provide their minor children with an education.  N.Y. Fam. Ct. Act § 1012(f).  The

fact that they chose to do so by sending their children to private or parochial school, rather than

public school, does not render the payments subject to scrutiny by the Trustee for avoidance, any

more than the Trustee would be entitled to second-guess other choices made by debtors pre-

petition in providing clothing, food, shelter, or other goods or services, to their minor children.

The Debtors received reasonably equivalent value and fair consideration for the Tuition

Payments for their children's education, not only because the Debtors satisfied their legal

obligation to educate their children, but also because the Debtors and their minor children must

be viewed as a single economic unit for these purposes.  In other words, goods and services

purchased by parents for their minor children should generally be treated, for purposes of

constructive fraudulent conveyance analysis, as though they had been purchased by the parents

for themselves.

This conclusion follows from the fact that the affairs of parents and their minor children

are generally so entangled as to effectively create a single economic unit.  As explained by the

New York Court of Appeals:

> It is artificial to separate the parent and child as economic entities
> . . . . The reality of the family is that, except in cases of great
> wealth, it is a single economic unit and recovery by a third party
> against the parent ultimately diminishes the value of the child's
> recovery.

Holodook, 36 N.Y.2d at 47 (discussing the rationale for prohibiting third-party defendants from

seeking contribution from an injured child's parent on the basis of negligent supervision). Put

differently, dependent minor children have no separate economic life from their parents; they

have no independent means of support and no control over the economic choices made on their

behalf. Conversely, parents' economic lives cannot be meaningfully separated from those of

their dependent minor children, whose assets are generally inextricably commingled with their

parents', who generally have no liabilities, and who are wholly dependent upon their parents for

all of the goods and services they receive. This reality compels the conclusion that goods or

services provided to a minor child (in these cases, educational services) may constitute

consideration to the parents.

At the hearing on this motion, the Trustee's counsel raised for the first time the argument

that the record on this motion is insufficient for the Court to determine whether the Debtor's

children in fact received any educational benefits from the Defendants. In so doing, the

Trustee's counsel suggested that discovery concerning such matters as the children's attendance

records or the parents' participation in parent-teacher conferences would be appropriate. (Tr. at

38: 6-14, Adv. Pro. No. 13-1105-CEC, ECF No. 23; Tr. at 38: 6-14, Adv. Pro. No. 13-1107-

CEC, ECF No. 19.)

This last minute argument is entirely meritless. The complaints in these adversary

proceedings are devoid of any allegation that the Defendants failed to provide an education to the

Debtors' children.  Indeed, the complaints contain few, if any, specific factual allegations, instead presenting "[t]hreadbare recitals of the elements" of the Trustee's claims and "labels and conclusions . . . [and a] formulaic recitation of the elements of a cause of action."  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.  (See Compl. ¶¶ 13-20; Adv. Pro. 13-1105, ECF No. 1; Compl. ¶¶ 15-22, Adv. Pro. No. 13-1107, ECF No. 1.)  Under standard articulated in Iqbal and Twombly, the Trustee cannot avoid dismissal of a formulaic, general, fact-free pleading by arguing that he needs discovery to add flesh to the bare bones of his complaint.  This is particularly so given that, in this chapter 7 case, the trustee could have obtained discovery prior to the commencement of this case pursuant to Bankruptcy Rule 2004 to investigate the factual underpinning of his claims.  It is obvious that this far-fetched argument is nothing more than a red herring proffered in a last-ditch effort to avoid dismissal.

Equally lacking in merit is the Trustee's argument that discovery is needed to determine whether the Debtors benefited by the "religious formation" provided by the Defendants to the Debtors' children.  (Tr. at 49, Adv. Pro. No. 13-1105-CEC, ECF No. 23; Tr. at 49, Adv. Pro. No. 13-1107-CEC, ECF No. 19; Pl.'s Opp'n ¶ 10, Adv. Pro. No. 13-1105-CEC, ECF No. 20; Pl.'s Opp'n ¶ 10, Adv. Pro. No. 13-1107-CEC, ECF No. 16.)  Putting aside, for the moment, concerns about the inappropriateness of permitting the Trustee to interrogate the Debtors concerning their religious beliefs and practices, this argument too is a red herring.  The Defendants do not rely on any "religious formation" provided to the Debtors' children as a basis for dismissing the complaint, and the outcome of the Defendants' motions to dismiss would be same if the Defendants were secular private schools rather than parochial schools.  The Defendants' motions, and this decision, address the only claim even arguably articulated in the complaints: that because the recipients of the education provided by the Defendants were the Debtors'

children, and not the Debtors, no reasonably equivalent value or fair consideration was received in exchange for the Tuition Payments. This claim, for all of the reasons set forth above, must be emphatically rejected.

B.     Unjust Enrichment

The Trustee alleges that the Debtors' children and/or the Defendants were unjustly enriched at the expense of the Debtors' estate, and therefore seeks the imposition of a constructive trust on the Debtors' interest in their children's and/or the Defendants' bank accounts.

To succeed on a claim for unjust enrichment under New York Law, one must show "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). The concept is that one party has received a benefit at the expense of another party. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). "Recovery under unjust enrichment is a recovery in quasi contract." Geltzer v. Borriello (In re Borriello), 329 B.R. 367, 381 (Bankr. E.D.N.Y. 2005). The presence of unjust enrichment is a necessary element for the imposition of a constructive trust. Pryor v. Ventola (In re Ventola), 398 B.R. 495, 498 (Bankr. E.D.N.Y. 2008) ( "Under New York law, to find constructive trust the courts look to see if there are (1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." ).

The Defendants received tuition payments from the Debtors and, in exchange, provided education to the Debtors' minor children. The Debtors received the direct and indirect benefit of their children receiving an education. The enrichment, as between the Defendants and the Debtors, therefore, was not unjust. See Kramer v. Chin (In re Chin), 492 B.R. 117, 125-126

(Bankr. E.D.N.Y. 2013) (finding no unjust enrichment when the debtor transferred property, to which she held bare legal title, to her brother because he was the "true" owner); <u>Boriello</u>, 329 B.R. at 381-382 (finding no unjust enrichment when the debtor transferred his interest in real property to wife). For an unjust enrichment claim to succeed, the transfer must be unfair as between the transferor and the transferee. <u>Boriello</u>, 239 B.R. at 382. As long as the transferor received a benefit, as the Debtors did here, the transferee is not liable on an unjust enrichment claim. <u>Id.</u> at 381-382. Whether the transferor's creditors also benefitted from the transfer is irrelevant to an unjust enrichment claim. <u>Id.</u> at 382. For these reasons, the Trustee's unjust enrichment claims against the Defendants must fail, and there is no basis for the imposition of a constructive trust.

The Trustee's unjust enrichment claims against the Debtors' children must also fail. The children are not defendants in these adversary proceedings. Moreover, the children's "enrichment" by receiving an education paid for by the Debtors is not unjust.

<u>Conclusion</u>

For the foregoing reasons, the Defendants' motions to dismiss are granted. A separate order will issue.



**Dated: Brooklyn, New York**
**December 4, 2013**

**Carla E. Craig**
**United States Bankruptcy Judge**